Case 24-5061 Jeffrey Clark et al. v. Louisville Jefferson County Kentucky Metro Government et al. Oral argument 15 minutes per side. Mr. Monarch for the appellate. May it please the court. This is a case in which a forensic serologist is the only remaining claim against this forensic serologist is a Brady claim and to our research it's the only case in the Sixth Circuit that in which fabrication of evidence is not at issue. There was a 2012 decision out of the Northern District Ohio that examined the exact same cases that are presented on behalf of FLE and in that case Judge Folster stated that the Sixth Circuit has only denied qualified immunity to non-prosecutors who intentionally fabricated evidence upon which they later testified at trial. To our research that continues to be true and in this instance. But don't you don't you think I don't know how to pronounce the case but it starts with an M. Is it Moldawan? Moldawan. Don't you think that that case clearly establishes the rule that Brady applies beyond prosecutors to police officers? Yes, yes sir. So why wouldn't that also I recognize that that case was about police officers and not forensic scientists but why wouldn't it I mean that seems to me to be the questionable leap as Judge Kethledge said in his concurrence but once we've made that leap it seems to me quite straightforward to say that it applies to all law enforcement actors. I absolutely agree with you. Okay. Brady does in fact apply to Mr. Thurman and Mr. Thurman produced his final reports which contain the conclusions to which he testified. What's at issue in this case are his notes, process notes that were taken while in the process of observing hairs that were comparing evidentiary hairs with Mr. Harden's head standard. Those process notes never intended to reflect the final conclusions of Mr. Thurman and in fact they don't state anything of any evidentiary substance. But since we are on a qualified immunity appeal I take it you would concede I recognize that your client tried to reconcile the two reports by suggesting that brown to light brown may have been referring to more than one hair but it seems to me that that is a dispute of fact about what the notes were conveying and there is at least a genuine issue of material fact that maybe it was talking about one hair therefore it would seem inconsistent with what he later testified. Your Honor, our position on this is that the notes to all four experts who testified before the District Court testified that the conclusion of visual similarity between two hairs is made by looking through the microscope and that the notes do not pertain or and are not relevant to that conclusion. So for that reason and even during Daubert proceedings the District Court held that this was a matter for expert opinion testimony. The taking of the notes, the interpretation of the notes all pertain to expert opinion testimony. In this case we absolutely agree that with the District Court's findings of fact the problem being that the District Court's findings of fact are inconsistent. Not findings of fact being inconsistent but rather he clearly sets forth the facts and his conclusions of law regarding Brady are inconsistent. Because one theory might be the fabrication of evidence claim does require some amount of intentional wrongdoing but and in other circuits as applied to police officers the Brady claim would too. There said there is no bad faith element in our circuit. There's an absolute liability on the officers part. So it's not necessarily inconsistent in my mind to think one rejected bad faith so I agree with you if we were in a different circuit that that would be quite compelling but since we have this precedent that binds us that says there's no bad faith element in the why isn't that a way to reconcile the two? In this instance the District Court ruled very generally that Brady rights are constitutional rights and stated in a very broad-brush manner that everything had to be produced. If we were to hold this to be the law that these process notes that reflect only his thoughts and impressions then every scrap of paper that every police officer wrote on through the course of an investigation would constitute Brady evidence. The standard with Brady as with any other clearly established constitutional right is set forth in Plumoff v. Rickard which says and a defendant... Let me interrupt because I don't find that really responsive to the question here. I think the question that you say is under the fabrication of evidence it creates a conflict. The decision there creates a conflict with the decision on the Brady claim and I'm struggling with that because I don't see... We look at claims frequently under different standards of review and that's what strikes me here is the fabrication of evidence claim was based on the court's explanation that our precedent requires expert testimony that did not exist on the record so it was a failure to meet that review standard. The Brady claim is distinct from that. It does not require... there's not the same failure of evidentiary proof in the Brady claim. In fact it seems to have sufficient proof that it can go forward. It seems I'm struggling with why these aren't simply two different claims under two different standards of review and that explains the distinction. The question with regard to these notes is what do they prove? Do they prove anything at all? The conclusions of the final report to which he testified were that that the hair was similar in color and characteristics and that it may have a common origin and he testified that he could not attribute it to the defendant Hardin. But I think you're begging the question. I'm trying not to. The question is you say that there is conflict internally within this court's decision, the court decision below, that shows that he should also... your client should also lose the Brady claim and what I'm saying to you is isn't it a fact that those are two distinct claims under two distinct standards of review, which courts do all the time, the first one fails, the fabrication fails under the standard that was applied by the district court. But that does not impact the Brady claim because it exists under a different standard. I believe the common standard between the two claims is that a clearly established constitutional right, which under our precedent has to be specific enough for a reasonable forensic serologist or forensic examiner to understand that he is violating that right. And in this case to just say that Brady claims were constitutionally established, clearly established rights is a broad brush, not specific in any manner to the standard that should apply to Mr. Thurman in the production of his notes. In this case with four forensic serologists who have testified that these notes do not pertain to the decision, a reasonable forensic serologist would not believe that he was under any obligation to produce them. And in fact it was Kentucky State Police policy not to produce them at the time. The standard requires... I think you're switching to the elements of a Brady claim, so it's not exculpatory or not material. I did have a question. So I agree with you that we have jurisdiction over the overarching question about whether it was clearly established that Brady could extend here. But once we get into these elements and these more fact disputes, it's not obvious to me that we have jurisdiction. So materiality, for instance, we've said it's a mixed question that we reviewed de novo. So I would think that would be good for you. But at the same time, we have this case called Gregory that suggested the mixed question was for the jury. And so whether something is material is a fact question. The court held there's a genuine issue of material fact that the jury could find prejudice. So we can't review that, can we? Yes, Your Honor, you can. Why? The reason is that there are no disputes of fact as to the relevant... as to the substance of these notes. All four experts who have testified below testified that you cannot use the notes to reach the conclusion. And in fact the notes were never intended to reflect the final conclusion to which he testified. Because plaintiff has come forward with no evidence, no expert on their own behalf to rebut that testimony, to say that yes you can use the notes to determine what shade of brown or whether these two hairs appear consistent with one another. Because no expert has come forward to say that you can use the notes to reach that conclusion. It is an undisputed question. Aren't you challenging the district court's facts though? Their conclusion that there is a genuine issue of material fact? Your argument right now was just the district court got that genuine issue of material fact inquiry wrong. No, sir. My argument is that the district court correctly found the facts but reached an incorrect legal conclusion based upon those facts. So that just gets... we're kind of talking past each other. The ultimate... the ultimate conclusion about whether a set of facts, a set of historical facts, arise to a level of materiality, I think you are saying is a question of law. The concern I have is that Gregory... and my instincts might have been with you aside from this Gregory decision, which the red brief cited and said... or the appellee's brief cited and said it was a question for the jury. And so if it's a fact question, it seems to me that we don't have the authority to review it under our limited jurisdictional scope in this qualified immunity appeal. It is... materiality, you're correct, is a mixed question of law and fact. In those cases, it's important to keep in mind then that the district court dismissed the fabrication of evidence claim on the merits. It wasn't a grant of immunity. It was a dismissal on the merits for absolute lack of evidence. So there is no dispute of fact as to what is relevant here. Appellee's counsel will certainly try to generate one, but there really is not. But do you have a case that is... that distinguishes Gregory or that suggests that this ultimate question of materiality is one that we have the authority to review in an interlocutory qualified immunity appeal? Well, this case is specifically distinct from Gregory in a number of... a number of instances. Well, I'm just asking for another case that I... that could assuage my concern that this mixed question or the ultimate question, whatever you want to call it, whether the historical facts rise to the level of materiality, is something that we could review in an interlocutory appeal. As I sit here right now, sir, I do not. But I think the law is very clear that it's a mixed question of law and fact. And when there is no real dispute as to whether or not these notes can be used to discern the visual appearance of the hair or to even impeach the conclusion that the visual appearance of the hair differed, then it becomes a question of law. I mean... Let me ask you about Luann Thomas. The testimony at trial there, she applied... she explained that the... the way Mr. Thurman justified the problem with similarity, after having begun to testify and then coming back and saying, here's what I must have done. I must have looked at that group together, which is outside the rules, and I'm struggling with why there's not a dispute of material fact where Thurman's explanation was clearly rejected by Thomas. She said, I want to make sure I'm getting it right, that Thurman's changed explanation for what he did would be wholly improper because it would never be okay to record a range of characteristics across multiple unknown hairs. Such a practice would be a gross departure from the procedure at the lab. And based on the data that Mr. Thurman himself reported, the observation notes, the unknown hair from the sweatpants is not similar to Mr. Harden's hair. Now those are factual differences in this record. For purposes of this appeal, Your Honor, I'm more than happy to concede that it was a single hair and that the notes differ from the conclusion of visual similarity. The point being that the notes themselves have no bearing upon the conclusion of visual similarity. All experts agree that you must look through the microscope at both hairs at the same time and therefore determine a match. And then why don't you see a dispute of the way that functions in the very testimony of Ms. Thomas? That again is a, it is, it goes to their contention, Apelli's contention, that they can prove the visual appearance of the hair by virtue of reading the notes. And that is . . . It certainly does because she says you can and they're not similar. Your Honor, that's a matter for expert testimony. That's a matter for someone who has been trained in hair comparison analysis. That is something that . . . I'm struggling with that answer because it is expert testimony under the standards that govern fabrication of evidence. But in the separate claim, the separate Brady claim, there is a different standard. And doesn't the testimony of Thomas establish that there is a question, a dispute of material fact? Your Honor, I'm going to rely on the district court in this, in this instance. The district court found that although Thomas found inconsistency between Thurman's notes and his finding of similarity, she did not dispute Thurman's finding that one of the hairs taken from the victim's clothing was microscopically similar to Hardin's. To the contrary, Thomas explicitly stated that disproving Thurman's conclusion of similarity would require actual comparison of two samples. That's a finding by the district court upon which I am happy to rely. And even with your concerns that Ms. Thomas says, well, he may not have followed procedure or may not have followed process, there still remains no dispute. Do you think . . . so getting back to what Judge Strange is talking about, do you think . . . so the judge clearly held there was insufficient evidence to create a genuine issue of material fact based on the notes alone that his testimony that the two hairs were the same was similar. But the inquiry here is just, isn't materiality a lesser standard? So in the intentional fabrication claim, you actually have to prove that the evidence was wrong, that there was dissimilar. But for the Brady claim, you just have to prove that it's material, which is what, a reasonable probability of a different outcome. You don't actually have to prove that it would have led or it was false. Well, two responses. First, the standard is apparent. The exculpatory value of it must be apparent. The former standard was it must be potentially useful. And in that case, bad faith was required. But apparent exculpatory value is what a lay person, non-lawyer, is expected to produce. And even under those circumstances, a public official is given the benefit of the doubt because they are a non-lawyer. And my second response to your note is that there's no . . . if the notes cannot disprove his testimony that the hairs were visually similar, they're not even evidence. They don't disprove anything. They don't impeach him in any way. The notes, in all regards, were preliminary conclusions, never intended to be a final report. I'd ask you to take a look at this from the perspective of a forensic scientist or forensic examiner. His notes could be misconstrued. It's important that he state his final conclusions in his final report. And that was what was emphasized to him. And under those circumstances, he would be more concerned about his notes being misconstrued and misportrayed in a criminal context, and therefore would be careful not to produce them. And it was the policy not to produce them. So my response to you is that it would . . . he's required to produce material with apparent Brady value, and these did not have that. Well, what did the Kentucky Supreme Court say about materiality in this case? The Kentucky Supreme . . . I agree completely, Judge Stranch, that the hair evidence was important. What I disagree with is whether these notes were important. The notes . . . since the notes do not pertain to the issue of visual similarity, then okay. What do they mean? They mean nothing. And therefore, this is what . . . I struggle with why they wouldn't be a prior inconsistent statement that would have significant impeachment value, that he reached a conclusion. What if the note just said, these two hairs are completely dissimilar? You still think it would be . . . you couldn't even use it to impeach his testimony when he got up on the stand and said they were similar? In the Gregory case, they used another expert to disprove the conclusion of visual similarity who also had viewed the hairs. That's what it takes in order to dispute . . . But why wouldn't it be . . . so you think just a prior inconsistent statement of the same witness can never be enough? So . . . well, that also raises the question of was this an inconsistent statement? Assuming that we have to take the facts in the light most favorable to harden, I think that we would have to conclude it's an inconsistent statement. If . . . Do we have a time? I've not seen the time clock. Thank you. I . . . Why don't you take a moment to conclude? I think we've let the time get away from us. Thank you, Joe. If these notes had been a reflection of the final conclusions, they could possibly, maybe, be considered a prior inconsistent statement. But they were never . . . they're notes. They're process notes, just like any rough draft. So they were never intended to be a statement of his final conclusions. Everyone agreed that those are determined by looking through the microscope and that that's how the science is. And with that, I understand my time is . . . Thank you so much. You'll have your rebuttal. May it please the Court, there's no dispute that for a forensic serologist to intentionally suppress exculpatory evidence was a clearly established constitutional violation by 1992. The district court here did a careful review of the record and concluded that a reasonable jury could find Mr. Thurman did exactly that. This court does not have jurisdiction to look beyond that factual finding and respectfully should not be asked to. The problem with Mr. Thurman's arguments is that they all hinge on the facts being found in his favor in one particular regard. In other words, they all hinge on the bench notes being read in a way that Mr. Thurman came up with after an extended break in his deposition, after spending over a minute looking back and forth between his notes, trying to come up with a way to reconcile them. And that . . . his job was to do. What he then said, here's what I must have done. Was that not at odds with the required procedure as he had already testified to it? It was, Your Honor. At the beginning of the deposition, he testified very clearly as to his practices, his training, and frankly, it's not just his admissions prior to seeing this contradiction that prove his explanation false. It's also what he did when it came to analyzing other evidence in this case. He made other . . . he followed the procedures that he testified to at his deposition when he examined other evidence in this case. I think your friend on the other side would concede, at least I thought he just did, that we have a duty to assume that the prior report is inconsistent because it was won here and his after-the-fact reconciliation is just a dispute of fact. And that he's really disputing, even assuming that, he's disputing the ultimate question of whether it would then be exculpatory and whether it would then be material. And I'm kind of curious about this ultimate question standard of review. So Gregory does say it's a mixed question for the criminal case that suggests we review the ultimate question de novo, which would make it seem more legal than factual. So take all the historical facts. We assume those in the light most favorable to Mr. Hardin. And then the ultimate question, do those facts rise to the level of materiality? I think we traditionally review that de novo. And if so, why wouldn't we have jurisdiction to ask if the court got it right? Sure. So the reason here is that the only legal question is bound up in the factual finding that the district court made. In other words, this isn't a case like the Siggers case that my colleague cites where everybody agrees as to what the evidence withheld was. And therefore, the court is reviewing de novo the question of whether that's a clearly established constitutional right. This is a case where in order to actually, and this case is more like Franklin versus the city of Southfield, where in order to determine that this court would have to review over a legal question, you have to actually first resolve an issue of fact. Because Gregory is crystal clear, and the cases that Gregory, the line of cases that Gregory is interpreting are crystal clear that a forensic serologist can't intentionally suppress evidence. As of 1992, that was a clearly established constitutional violation. And the point isn't that Thurman had to found under extraordinarily similar circumstances, frankly, regarding one of Mr. Thurman's colleagues, that that duty was clearly established as of the time of the suppression in this case. Is it really true that it's clearly established? Suppose he hadn't written anything down. Suppose he looked, he did a preliminary review of the two hairs and thought, maybe they're a little dissimilar, but I want to go sleep on it. And then he comes back the next day, and then he writes his final report and actually says, you know, I think they're similar. Are his mental, his initial mental impressions that he did not write down Brady material? Sure. The problem is, the problem with that hypothetical is that that's not the way that the science actually works. And so although everybody agrees that for a fabrication claim, well, regardless, what Thurman actually did, and this is set forth in laboratory process and procedure, this is the way he trained, there's no dispute about this. What he actually did is he looked through the microscope, he compared the characteristics of this hair to the head hair standards from Keith Harden, and his obligation and his practice was to then document, as he's looking through the microscope, his data. He is there. There's a he's not looking through the microscope and subjectively thinking about whether these two things look similar or not. What he's actually doing and what he's admitted is he's looking through the hair to see whether any of them, any one characteristic is dissimilar from the hairs in Keith Harden's sample. He concluded not just one was dissimilar, there are actually three of the 15 characteristics that were inconsistent with Keith Harden's sample. So you think it's just a bright line, yes or no? It's not obvious to me. It does strike me as there might be some judgment calls about whether something as brown versus light brown. I mean, so if that's true, then it might be when he's doing that initial analysis, he kind of wants to look at the two hairs. As I understand it, they're like both there or something, and then he looks through the microscope and he's documenting the different characteristics. If he looks at it once and is like, I don't know, maybe they're similar, and then he on color or some other characteristic, and then he comes back and looks at it later, and he's like, you know what, I do think they're similar, now that I've looked at it twice. It strikes me that under your rule, his initial mental impressions may be Brady material. So is your response to me that it's just always objective and that there's a yes or no answer and it's obvious? No, not at all. My response is that here what Thurman documented clearly impeached what he testified to at trial. That's kind of the hypo I'm getting at. If they were just initial notes, why does it matter if they were documented? His impressions are his impressions, and if that's what he's doing, almost your rule would be all initial impressions are themselves Brady material. It's not because they're not initial impressions, they're his data, and the best evidence of their impeachment value, which is what we're talking about, is what happened at his deposition when he was confronted with his bench notes, and I would urge the panel to review the video clip of that deposition, which is 316.38, page ID 23775, because what actually happened at his deposition is he spent, as I mentioned, over a minute looking back and forth, and he could not come up with any way to reconcile his two sets of notes with the report he finally made to the prosecution, and had the notes been turned over at the criminal trial, that is what the criminal jury might have seen, and given how close this case was, that could have made the difference between Keith Harden spending 20 years wrongfully imprisoned and an acquittal, and even if you take Thurman's explanation, even if Thurman had come up with the explanation he came up with at his deposition in front of the criminal trial, that explanation still contradicts his training and his practice, and that in and of itself has impeachment value, and so the notes themselves, regardless of whether the two hairs were microscopically similar, although there's abundant evidence that they were not, the notes themselves were important impeachment material, they're important exculpatory material. Keith Harden also could have, had he received the bench notes, that clearly contradicted Thurman's ultimate report, gone out and hired his own expert. Is it your position that if the notes had been exactly the same as what he testified, they wouldn't have had to be produced? If the notes had been entirely consistent with the report that Thurman turned over to the prosecution and what he testified to, then yes. Okay, so your argument turns on to the degree to which the notes are different than what he ultimately testified to. Well, the district court's already found that the notes were significantly different, the notes of his data were significantly different from what he reported and what he testified to. So you set that out of the field for our jurisdiction? Yes, this court has to defer to that factual finding, which is well supported, and which not only Thurman's supervisor, Ms. Thomas, who is an expert, we did designate her as our expert at trial, has admitted, and Thurman admits himself that the notes are different from the actual report. The report says these could be Keith Harden's hair, the strongest conclusion a forensic hair examiner could make at the time. That's what he reported. In fact, the notes show that he was required to report that the hairs could not have come from Keith Harden. They could not be more different on their face. Is part of the issue here, then, the testimony of Thomas explaining how the scientific procedure works? I feel like when we begin to talk about how far out you would have to go, what would be considered Brady material, I thought the testimony of Thomas addressed that issue by explaining, here is how the scientific procedure works. Here is what you look at. Here is what you record. And we do call them notes, but, in fact, both Mr. Thurman and Thomas, I thought explained how this was, in fact, part of the scientific analysis, not merely notes, but it was, in fact, data points. Have I misunderstood this procedure? Not at all. That's exactly correct. And it's not just that they are scientific data points. The procedure, Ms. Thomas and Thurman explained this, the procedure in the laboratory is the notes actually are subject to peer review. And so the notes have to be sufficiently clear and documented and done in a particular way so that another scientist at the laboratory can look at the notes and determine that the notes are not just consistent with, but the foundation for the report that the scientist ultimately makes. And so, yes, that testimony completely disproves and negates Thurman's arguments now that these are just thoughts and impressions written down on a piece of paper. They actually play a particular scientific function in the laboratory, and they must support the final report or else the final report is not valid. And Thurman would have known that and admits he did know that at the time. And so the exculpatory value of the notes was apparent to Thurman. Under the standard of Brady. Under the standard of Brady, yes. I'm struggling with what feels to me like a you must prove your Brady claim, which is not the case. The case is you must put sufficient evidence in that it could be the basis of a differing decision on the part of the final factmaker, final fact determiner. Absolutely. And there are many ways that this material could have been used at trial had it been turned over. Of course, on the Brady claim, we are not required to prove that the notes themselves were dispositive. The point is that the jury should have had Mr. Harden should have had the benefit of being able to cross-examine Mr. Thurman with the notes, and had that happened, the outcome, although we don't need to prove this, but had that happened, the outcome of the trial might have been different. I do think your friend on the other side has something to the notion that there seems to be a conflict in the district court's ruling. If the notes themselves are not enough to create a genuine issue of material fact over whether Thurman's testimony was false for purposes of the fabrication claim, why would we think that they're enough to show that a reasonable jury could reach a different conclusion for purposes of Brady? So I think it comes, first of all, we think the district court's decision was wrong on the fabrication claim. One way that you can prove a fabrication is to have an expert redo the analysis and say that it's false. That wasn't possible here because the question hairs have been fully consumed by the DNA testing that exonerated Mr. Harden and Mr. Clark. Well, we're not reviewing that claim, are we? No. No, you're not. How do we deal with that exactly if we disagree with it? I guess we have to wait until later? We went through that analysis and determined that we had to wait until later. What's so weird about it, though, is under Johnson v. Jones, we have to take the facts in the light. So this is the oddest case I've seen where it's the appellee who's kind of fighting the district court's findings because you are trying to say that there was maybe bad faith evidence here. But I think we have to accept under the jurisdictional rules that there wasn't, which is very strange. Well, it's strange, especially given that there is ample evidence of bad faith here because of Thurman's communications with the police, because he wrote down before he did his testing, contrary to what he was supposed to do, that he believed that Keith Harden falsely had failed the polygraph, that he had been told that Keith Harden had intentionally premeditated this murder. He'd been told these false things that bias his scientific conclusions. So we think there is evidence of bad faith, but we don't need evidence of bad faith on the Brady claim. But do you think Johnson should bind us or not? So do you know Johnson v. Jones is the one that says we're supposed to take the facts that the district court does, and we're not allowed to just reassess that for purposes of our jurisdiction? Yes, but the facts, because of the intent requirement when it comes to a fabrication claim, I think there's no reason to go through that analysis here. Thank you. Thank you. Your Honors, I think the most important place to start is with what they're trying to prove here. At page 48 of their brief, they state specifically, Harden disagrees because critique from other experts is not the only way to prove a forensic analyst lied. Here, Thurman's own contemporaneous notes are proof. They had no expert in support of that. And that's what she just said. That was the basis of her whole argument up here. They're trying to prove that Thurman lied. Well, there is no fabrication of evidence claim currently before the court. Are they trying to prove that he lied or that his opinion was just not... that there's reason to... An opinion is a probability determination, and it's just attacking the probability that he's correct. It's not saying he's lying. Exactly, and the way to do that, according to every forensic examiner here, is to have another forensic examiner examine the hair. Can't you do that just simply through crossing the witness himself to draw a question as to the probability of the witness's... the weight of his testimony? You don't have to have another opinion expert to do that, do you? You're absolutely correct, and that happened at the criminal trial. They asked him specifically, can you attribute this hair to Keith Harden? And he said, no, I cannot attribute this hair. There is no false testimony. But if they had his notes, they could have further undermined the probability that he was correct. The question then becomes whether the exculpatory value of those notes is apparent to a lay person. Could they have... I guess their position is the notes are different than what he ultimately testified to. That should have been apparent. The notes... If the notes were the same, then that's one thing. But if they're different, isn't that enough for it to be apparent? In fact, they're not greatly different. I mean, how many shades of brown are in this room? Some are light... But that's perhaps not the most distinct one. Under pigment and density, which are size, density, the Harden's head hair was averaged to slightly heavy, and the unknown hair was average light. Both are average, Judge. Well, one is on this side of the scale that's heavy, and the other is on the other side of the scale. And then the medulla in Harden's is medium. In the unknown hair, it's medium to thick. These are scientific data points that do not match. I'm struggling with you saying it's the same thing. I think as a layperson or even as a jurist, I look at those and I think those are different conclusions. And so would a jury speculate, but they could not actually determine unless they looked at the hairs under a microscope. I would like to add one... That was when he was looking at the hairs under the microscope and recording his data points. He's the one who indicated microscopically these distinctions in three categories, right? When looking at one hair at a time under Exhibit 16 and then later comes back and looks at the two hairs compared to one another, 16 and 21C. The notes are a sorting hat that allows him to get down to which two should I compare to. And it's only under the microscope that you can tell the difference. That is what every expert has said. The one thing I wanted to say to this court is that at page 52, they cite a clearly incorrect standard in their brief as far as what a clearly established constitutional right is. The correct standard is stated under Plumoff v. Rickert. It's been the Ashcroft rule. A reasonable forensic serologist must have understood that he was violating these rights. They implied that it could be broad-brushed. It cannot. He's a layperson entitled to the benefit of the doubt. Thank you, Your Honors. It's been an honor to be here today. The case will be taken under advisement and rendered in due course. Thank you for your arguments and briefing. You may call the next case. Thank you for your time.